NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| RICHARD FOXTON,<br><br>               Petitioner,<br>v.<br>PATRICK NOGAN, et al.,<br><br>               Respondents. | Civil Action No.: 18-cv-03819<br><br>**OPINION** |

**CECCHI, District Judge.**

Before the Court is the petition of Richard Foxton ("Petitioner") for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his state court convictions. ECF No. 1. Respondents filed an answer (ECF No. 6), to which Petitioner replied (ECF No. 11). For the following reasons, the Court denies Petitioner's habeas petition and denies Petitioner a certificate of appealability.

**I.    BACKGROUND**

In its opinion affirming Petitioner's conviction, the New Jersey Superior Court, Appellate Division summarized the factual background of this matter as follows:

> The underlying facts of this appeal concern sexual abuse allegations against [Petitioner] by his biological daughter, A.G. . . .
>
> On February 1, 2006, a Bergen County grand jury issued an indictment charging [Petitioner] with four counts of first-degree aggravated sexual assault and one count of second-degree endangering the welfare of a child. Shortly thereafter, the State moved to amend the indictment to include a count of aggravated sexual assault that occurred in Passaic County. Although the count had been true billed by the grand jury, the State had mistakenly omitted it from the filed indictment. The court denied the motion.
>
> [Petitioner] was tried before a jury and was convicted on all five counts of the indictment. [Petitioner] appealed the conviction, and [the Appellate Division] reversed and remanded for a new trial. Specifically, [the Appellate Division] determined that admission of evidence of other sexual assaults not included in the indictment—including the sexual assault in Passaic County—deprived [Petitioner] of his right to a fair trial.

On remand, the State renewed its motion to amend the indictment to include the Passaic County aggravated sexual assault count. The court again denied the motion. [The Appellate Division] granted the State leave to appeal and affirmed.

On February 4, 2011, the State filed a superseding indictment, which included the same counts as the preceding indictment, as well as the count pertaining to the Passaic County aggravated sexual assault. [Petitioner] was tried before a jury from November 15 to 17, 2011.

The following facts are derived from A.G.'s testimony at the re-trial. A.G., born in 1988, is the biological daughter of [Petitioner]. [Petitioner] was never married to A.G.'s mother, and when A.G. was about one year old, their relationship ended. Although A.G.'s mother and [Petitioner] no longer were together, A.G. maintained a relationship with [Petitioner], often visiting him and attending family functions with him.

A.G. testified that when she was about six or seven years old and living in an apartment in Hackensack with her mother, [Petitioner] would occasionally come to babysit her. During one of these occasions, [Petitioner] removed A.G.'s slacks and touched her vagina and breasts. [Petitioner] also removed his own pants and told A.G. to "play with" his penis. [Petitioner] instructed A.G. as to how she should touch his penis and she followed his instructions. A.G. claimed that between the second and fourth grades, she suffered from similar sexual abuse whenever she and [Petitioner] were alone in the Hackensack apartment. According to A.G., she did not reveal the abuse at the time because she did not understand what was happening and because [Petitioner] was her father.

Within a few years, the sexual abuse turned into sexual intercourse. When A.G. was about eleven years old, she and her mother moved into a home in River Vale. Thereafter, when A.G. was about twelve or thirteen years old, her father drove her back to her home from Paterson, where she had visited him. After he parked his car in front of the house, [Petitioner] ordered A.G. to get into the back seat where he proceeded to lie on top of her and penetrate her vagina with his penis. A.G. testified that she exclaimed "ouch" due to the pain, but [Petitioner] did not stop. A.G. testified that she did not say anything to her mother, who suffered from depression, because she did not want to upset her.

On another occasion, while driving A.G. home, [Petitioner] reached down A.G.'s blouse and touched her breasts and vagina. Once they got to A.G.'s home in River Vale, [Petitioner] went inside A.G.'s bedroom, pushed her on the bed, and removed her slacks and his own. [Petitioner] penetrated A.G.'s vagina with his penis. Although she exclaimed in pain, A.G. testified that [Petitioner] told her to "[t]ake it. Don't be a baby. This is the sort of thing[] that fathers and daughters do." [Petitioner] also made A.G. perform oral sex on him.

A.G. testified that the next assault occurred when she was fourteen years old. Her mother had dropped her off at the auto body shop [Petitioner] worked at in Paterson.

2

> Once there, [Petitioner] had A.G. get in the back seat of a car and then had intercourse with her.
>
> In 2003, A.G. and her mother moved to an apartment in Hackensack. A.G. testified that one day [Petitioner] came over to babysit her, and then took her into her bedroom and penetrated her vaginally. He also had A.G. perform oral sex on him.
>
> According to A.G., she began to realize the problems with [Petitioner]'s actions after she watched a television program about sexual abuse of children by family members. She decided not to reveal the abuse, but instead decided to minimize her contact with [Petitioner]. Soon thereafter, A.G. told her boyfriend and half-sister, with whom she was close.
>
> A.G. testified that the last sexual assault occurred in July 2003 following a wedding that A.G., her mother, and [Petitioner] attended. A.G. and her mother went home after the reception and [Petitioner] came over. Once home, A.G. went to bed, but awoke in the middle of the night to her father standing completely naked in the doorway to her room. She shut the door with him outside and went back to bed. In the morning, [Petitioner] entered A.G.'s bedroom wearing only a T-shirt. He pulled the covers off her bed, grabbed her and inserted his penis in her vagina. A.G. pushed [Petitioner] away and he left her bedroom. According to A.G., this was the first time she pushed [Petitioner] away. In 2004, A.G. began to suspect she might have a sexually transmitted disease. Because she was worried, A.G. finally informed her mother and a teacher at school about the sexual abuse, which was then reported to the Bergen County Prosecutor's Office.
>
> At the conclusion of the trial, the jury convicted [Petitioner] of all counts of the superseding indictment.

ECF No. 6-3 at 3–8 (internal citations omitted).

## II.  LEGAL STANDARD

"[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petitioner bears the burden to establish entitlement to relief on each claim in his petition based on the record that was before the state court. *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013); *see also Parker v. Matthews*, 132 S. Ct. 2148, 2151 (2012).

3

Under § 2254, amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244, a district court must give great deference to state-court rulings. *Renico v. Lett*, 559 U.S. 766, 772–73 (2010).  A district court shall not grant an application for writ of habeas corpus on any claim adjudicated on the merits by a state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2).

Federal law is "clearly established," for purposes of § 2254(d)(1), where expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *Woods v. Donald*, 125 S. Ct. 1372, 1376 (2015).  "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id*.  Where a petitioner challenges an allegedly erroneous factual determination by the state court, such determination "shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### III.   DISCUSSION

Petitioner's habeas petition raises three grounds for relief:  (1) ineffective assistance of appellate counsel for failure to challenge certain statements made by the prosecution in opening statements as prosecutorial misconduct; (2) that the superseding indictment was improper as it violated the "law of the case" doctrine and indicates vindictive prosecution; and (3) ineffective assistance of trial counsel for (a) failure to make a speedy trial motion based on the length of time for Petitioner's first trial, appeal, and second trial in state court and (b) failure to object to certain

background testimony of the victim. ECF No. 1 at 8–18. As explained further below, the Court finds that the first and second grounds for relief lack merit, and the third ground for relief is deemed withdrawn.

      **A.**       **First Ground for Relief: Ineffective Assistance of Appellate Counsel**

In his first ground for relief, Petitioner asserts that he received ineffective assistance of appellate counsel when counsel failed to challenge the state's opening statement as prosecutorial misconduct. The standard applicable to ineffective assistance claims is well established:

> Claims of ineffective assistance are governed by the two-prong test set forth in the Supreme Court's opinion in *Strickland v. Washington*, 466 U.S. 668 (1984). To make out such a claim under *Strickland*, a petitioner must first show that "counsel's performance was deficient. This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687; *see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). To succeed on an ineffective assistance claim, a petitioner must also show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687; *see Shedrick*, 493 F.3d at 299.
>
> In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). A petitioner asserting ineffective assistance must therefore show that counsel's representation "fell below an objective standard of reasonableness" under the circumstances. *Id.* The reasonableness of counsel's representation must be determined based on the particular facts of a petitioner's case, viewed as of the time of the challenged conduct of counsel. Id. In scrutinizing counsel's performance, courts "must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.
>
> Even where a petitioner is able to show that counsel's representation was deficient, he must still affirmatively demonstrate that counsel's deficient performance prejudiced the petitioner's defense. *Id.* at 692–93. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. The petitioner must demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299. Where a "petition contains no factual matter regarding *Strickland*'s prejudice prong, and [only provides] . . . unadorned legal conclusion[s] . . . without supporting factual allegations," that petition is insufficient to warrant

5

> an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief. *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010). "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697–98]," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

*Judge v. United States*, 119 F. Supp. 3d 270, 280–81 (D.N.J. 2015).

Although appellate counsel is subject to the same ineffective assistance standard applicable to trial counsel, *Smith v. Robbins*, 528 U.S. 259, 285 (2000), "it is a well established principle . . . that counsel decides which issues to pursue on appeal," *Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996). Moreover, appellate counsel need not raise every nonfrivolous argument a defendant wishes to pursue. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). As the chief component of effective appellate advocacy is the winnowing out of weaker claims in favor of those with a greater chance of success, *id.* at 753; *Smith v. Murray*, 477 U.S. 527, 536 (1986), the Supreme Court has held that "[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome." *Robbins*, 528 U.S. at 288 (citation omitted). As such, counsel cannot be constitutionally ineffective when he fails or refuses to raise a claim which is meritless. *Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000).

Here, Petitioner argues that his appellate counsel should have argued that the prosecution's opening statement contained several statements amounting to misconduct sufficient to warrant a mistrial. As the Third Circuit has explained:

> The Supreme Court has held that federal habeas relief may be granted when the "prosecutorial misconduct may 'so infec[t] the trial with unfairness as to make the resulting conviction a denial of due process.'" *Greer v. Miller*, 483 U.S. 756, 765 (1987) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). The Court further opined that for due process to have been offended, "the prosecutorial misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.'" *Id.* (citing *United States v. Bagley*, 473 U.S. 667, 676 (1985) (quoting *United States v. Agurs*, 427 U.S. 97, 108 (1976))). *See also Ramseur v. Beyer*, 983 F.2d 1215, 1239 (3d Cir.1992) (our review of a prosecutor's

6

>conduct in a state trial in a federal habeas proceeding is limited to determining whether the prosecutor's conduct "'so infect[ed] the trial with unfairness as to make the resulting conviction a denial of due process.'" (quoting *Greer*, 483 U.S. at 765)). This determination will, at times, require us to draw a fine line—distinguishing between ordinary trial error on one hand, and "'that sort of egregious misconduct which amounts to a denial of constitutional due process'" on the other hand. *Ramseur*, 983 F.2d at 1239 (quoting *United States ex rel. Perry v. Mulligan*, 544 F.2d 674, 678 (3d Cir.1976)).

*Werts*, 228 F.3d at 197–98.

Here, Petitioner takes issue with several comments the prosecutor made during his opening. First, Petitioner challenges the prosecutor's comments on the victim's mother's presence in the courtroom and gestured in her direction, to which defense counsel objected, and the court directed the prosecutor not to comment on her again, at trial counsel's request. ECF No. 1 at 8–9. Second, Petitioner contests the mention of the victim's various half siblings, some of whom were to be part of trial testimony, to which defense counsel did not object, but Petitioner argues were irrelevant and thus improper. Id. at 9. Third, Petitioner challenges the reference to "delayed disclosure," a clinical term concerning delayed reporting of child sexual abuse, as no expert was to testify to the term, an objection that formed the basis of his motion for mistrial that was denied. Id. at 9–10.[1]

On appeal from the denial of Petitioner's post-conviction relief ("PCR") petition, the Appellate Division rejected Petitioner's ineffective assistance of counsel claim because it found

---

[1] In his PCR appeal, Petitioner also argued that appellate counsel failed to challenge two other prejudicial comments: (1) a comment to the jury—asking them to realize that asking the victim to testify was akin to having a judge ask them about their first sexual experience—to convey why the victim might be reluctant in her testimony, to which defense counsel objected and resulted in a curative jury instruction regarding credibility; and (2) a comment where the prosecutor suggested the victim had no motive to lie, which the Appellate Division found improper but insufficient to render Petitioner's trial unfair given the lack of objection from defense counsel, suggesting that the comment did not seem prejudicial to counsel. ECF No. 6-7 at 7–8. In his current petition and reply, Petitioner does not argue that appellate counsel should have raised those issues. Yet even if Petitioner had raised such claims, the determination of the Appellate Division, that the comments were insufficiently unfair to warrant reversal, was not contrary to or an unreasonable application of federal law, and would thus not provide any valid basis for habeas relief.

that, even had appellate counsel sought to challenge the alleged misconduct on direct appeal, none of the claims were so prejudicial or egregious such as to deny Petitioner a fair trial in light of the curative action taken by the trial court in response to objections by defense counsel. ECF No. 6-7 at 5–8. Having reviewed the statements Petitioner now challenges, this Court agrees with the Appellate Division. While the mention of the victim's mother and the discussion of the number of children Petitioner had were to some extent irrelevant or improper, none of the comments were so egregious as to potentially render Petitioner's trial fundamentally unfair and any appeal on that basis would have been rejected. Therefore, appellate counsel could not have been ineffective in failing to raise such a claim.

The prosecutor's mention of the term "delayed disclosure," regardless of its clinical implications, likewise was not so egregious that it could have denied Petitioner a fair trial, as the term is largely self-explanatory and in any event the trial court provided a thorough charge regarding witness credibility, clearly curing any prejudice that may have resulted from mentioning that term. ECF No. 6-3 at 13. Ultimately, the Appellate Division correctly concluded that none of the comments challenged by Petitioner had the capacity to render his trial fundamentally unfair and that Petitioner's claim that appellate counsel should have challenged the comments was without merit. The Appellate Division's decision was neither contrary to nor a misapplication of federal law, and Petitioner is not entitled to habeas relief on this ground.

      **B.**    **Second Ground for Relief: Violation of the Law of the Case Doctrine and Vindictive Prosecution**

In his second ground for relief, Petitioner argues that: (1) the prosecution's decision to file a superseding indictment, which included a charge based on a sexual assault that occurred in Passaic County, violated the law of the case doctrine; and (2) including the Passaic County charge

in the superseding indictment amounts to vindictive prosecution. ECF 1 at 13–16. The Court rejects both arguments directly below.

With regards to his first argument, Petitioner points to his first guilty verdict being overturned on the finding that the state improperly submitted evidence about the Passaic County assault after accidentally omitting the Passaic charge from the original indictment, despite having obtained a true bill on the charge. The Appellate Division rejected this law of the case argument:

> [Petitioner's] reliance on the law of the case doctrine is misplaced. During the first trial, the sexual assault that occurred in Passaic was not part of the indictment. In [the Appellate Division's] decision reversing [Petitioner's] initial conviction, [the Appellate Division] determined the testimony pertaining to the sexual assaults that occurred in Passaic and Jamaica should not have been admitted at trial [as] . . . the probative value of the evidence "did not outweigh the prejudice inherent in permitting the jury to hear about the other [at the time uncharged] crimes. . . ." Additionally, [the Appellate Division] determined the trial court's limiting instruction pertaining to other crimes evidence was grossly inadequate. Thus, [the Appellate Division] concluded the admission of the other crimes evidence constituted harmful error. Nowhere did [the Appellate Division] address whether the Passaic County sexual assault could be joined in a superseding indictment. [Petitioner's] argument relies upon a distortion of our earlier decision and a mischaracterization of [a New Jersey Supreme Court decision setting forth when severance of criminal charges for trial is required]. Therefore[,] the law of the case doctrine did not bar the inclusion of the Passaic County count in the superseding indictment.

ECF No. 6-3 at 9–10.

Petitioner's claim that the superseding indictment violated the law of the case doctrine is, as noted by the Appellate Division, mistaken. Under both federal and state law of the case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case" before the same court. *Arizona v. California*, 460 U.S. 605, 618 (1983). In other words, a legal decision, once made, "should be respected by all other lower or equal courts during the pendency of [a] case." *Lombardi v. Masso*, 207 N.J. 517, 538 (2011). The doctrine, however, "directs a court's discretion, it does not limit the tribunal's power." *Arizona*, 460 U.S. at 618; *see Lombardi*, 207 N.J. at 538. And importantly, the doctrine does not

9

apply where the issue presented differs from the one presented in the previous decision. *See Arizona*, 460 U.S. at 618; *Lombardi*, 207 N.J. at 538 ("[T]he law of the case doctrine is only triggered when one court is faced with a ruling on the merits by a different and co-equal court on an identical issue.")

Here, the issues presented in the first and second appeal of Petitioner's guilty conviction are different. On appeal of Petitioner's first trial, the Appellate Division found that the testimony about the Passaic County sexual assault was sufficiently prejudicial to mandate exclusion, only because that assault was inadvertently left out of the indictment and was thus an example of improper "other crimes" evidence. The prejudice arose purely from the fact that the indictment did not include a charge for that assault; nothing in the reversal of Petitioner's first conviction touched upon whether the Passaic County assault could be charged. Accordingly, there was no law of the case barring the superseding indictment, and the Appellate Division's decision was not contrary to or an unreasonable application of *Arizona*. Thus, even assuming that the discretionary law of the case doctrine could be interpreted to be the type of Supreme Court law giving rise to habeas relief, Petitioner's argument fails because the doctrine is inapplicable here. *See Arizona*, 460 U.S. at 618; *Lombardi*, 207 N.J. at 538

Petitioner's second argument alleging vindictive prosecution also fails. In support of this argument, Petitioner asserts that the Passaic County charge was included in the superseding indictment in retaliation for his success in his first appeal. The decision to charge an individual with a more serious charge on remand after his conviction for a lesser charge was overturned, can form the basis of a due process claim on a theory of vindictive prosecution. *United States v. Goodwin*, 457 U.S. 368, 372 (1982) (citing *Blackledge v. Perry*, 417 U.S. 21 (1974)) (explaining that punishing a person for doing what the law permits him to do is a basic violation of due

process). The due process clause, however, is "not offended by all possibilities of increased punishment upon retrial after appeal, but only those that pose a realistic likelihood of vindictiveness." *Id.* (quoting *Blackledge*, 417 U.S. at 27–28). Where a situation gives rise to a likelihood of vindictiveness, direct evidence of a vindictive motive on the part of the prosecution is not necessary to warrant relief because a presumption of vindictiveness attaches instead. *Id.* at 376. The Supreme Court has found the presumption warranted in several circumstances, such as when, after a successful appeal, a greater sentence is imposed on retrial for the same charges without a special finding by the judge warranting the greater punishment, and when an individual asserts a statutory right to a trial de novo in a higher court following a misdemeanor conviction is charged in the higher court with a more serious felony charge. *Id.*; *see also Blackledge*, 417 U.S. at 27–28. Even where such a presumption applies, the prosecution "may rebut it by proffering legitimate, objective reasons for its conduct." *United States v. Esposito*, 968 F.2d 300, 305 (1992).

Here, Petitioner has presented no evidence warranting a presumption of vindictiveness. The record reveals that the state always intended to charge Petitioner with the Passaic County assault, as shown by the true bill obtained from the grand jury for the charge before Petitioner's first trial, but mistakenly omitted this charge from the initial indictment. The state thereafter sought to include the Passaic assault but was not permitted to amend the indictment without seeking a superseding indictment adding the charge. On remand, when the state sought and obtained a superseding indictment that included the Passaic charge, it essentially corrected an inadvertent mistake made while pursuing the first indictment. Therefore, the facts in this case clearly indicate that there was no likelihood of vindictiveness because the sole reason Petitioner was not initially charged with the Passaic assault was inadvertent error. Thus, as found by the Appellate Division, the facts of this case do not warrant a presumption of vindictiveness, and even

11

if they did, the state has rebutted that presumption by demonstrating that the Passaic charge was always intended to be included in the prosecution against Petitioner. Accordingly, the Appellate Division's rejection of Petitioner's vindictive prosecution claim was neither contrary to nor an unreasonable application of *Goodwin* or *Blackledge*, and Petitioner's second ground for relief lacks merit.

        C.        **Ground Three: Ineffective Assistance of Trial Counsel**

In his third ground for relief, Petitioner argues that his trial counsel provided ineffective assistance by failing to file speedy trial motions in his state court actions and by failing to object to certain background testimony of the victim. ECF No. 1 at 16–18. Respondents argue that the claims in the third ground for relief are either unexhausted, as they were not clearly raised on Petitioner's PCR appeal, or are procedurally barred because they were not raised during Petitioner's now completed PCR appeal process.

In his reply, Petitioner "admits that Ground Three is not exhausted. Therefore, Ground Three is negated." ECF No. 11 at 12. Petitioner also states that the Court should grant relief only on the "two [remaining] Grounds" discussed in his reply. Id. Based on these statements, Petitioner has withdrawn ground three and has elected to proceed on only his clearly exhausted claims. *See, e.g.*, *Mallory v. Bickell*, 563 F. App'x 212, 215 (3d Cir. 2014) (citing *Rhines v. Weber*, 544 U.S. 269, 274–78 (2005)) (noting that a petitioner may avoid dismissal of a mixed petition containing both exhausted and unexhausted claims by deleting the unexhausted claims and proceeding on only the exhausted claims). Thus, Petitioner's third ground for relief is dismissed as withdrawn.

Accordingly, Petitioner has failed to establish any valid grounds for relief under § 2254.

### IV. **CERTIFICATE OF APPEALABILITY**

A petitioner may not appeal a final order in a habeas proceeding where the petitioner's detention arises out of a state court proceeding unless he has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). As Petitioner's claims are without merit for the reasons discussed above, Petitioner failed to make a substantial showing of the denial of a constitutional right. The Court therefore denies Petitioner a certificate of appealability.

### V. **CONCLUSION**

For the foregoing reasons, Petitioner's habeas petition (ECF No. 1) is DENIED, and he is DENIED a certificate of appealability. An appropriate Order accompanies this Opinion.

DATED: April 16, 2021

_____
**CLAIRE C. CECCHI, U.S.D.J.**